UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEVEN J. SERR,

    Plaintiff,

v.

DANIEL YANISCH, *et al*,

    Defendants.

Case No.  C04-5616FDB

REPORT AND RECOMMENDATION

Noted for April 29, 2005

This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  Plaintiff has filed a civil rights complaint under 42 U.S.C. § 1983 and is proceeding *in forma pauperis*.  This matter comes before the court on defendants' motion to dismiss (Dkt. #13), which has been converted into a motion for summary judgment (Dkt. #16).  Having reviewed defendants' motion and the remaining record, the undersigned submits the following report and recommendation for the Honorable Franklin D. Burgess' review.

DISCUSSION

Plaintiff is currently a resident at the Washington State Department of Social and Health Services'

REPORT AND RECOMMENDATION
Page - 1


1  ("DSHS") Special Commitment Center ("SCC"). He has been committed to the SCC as a sexually violent
2  predator pursuant to Revised Code of Washington ("RCW") 71.09.060. See Order of Commitment, dated
3  February 4, 2005, Exhibit 3 attached to Defendant's Further Response to Defendants' Converted Motion
4  for Summary Judgment ("Defendant's Further Response").

5  Plaintiff made the following allegations in his complaint: (a) that defendants failed to provide him
6  with an evaluation as to whether he is a sexually violent predator within forty-five days of a state court
7  order finding probable cause to believe him to be a sexually violent predator; (b) that this forty-five day
8  time limit is required by state statute, administrative regulations and an SCC policy statement (SCC Policy
9  301); and (c) that defendants' failure to timely provide such an evaluation violates his right to substantive
10 due process under the Fourteenth Amendment to the United States Constitution. Plaintiff requested relief
11 in the amount of $1,500.00 in damages per day for the period of June 10, 2004, until such time that an
12 evaluation has been performed. However, in his response to defendant's motion to dismiss, plaintiff
13 argued the allegations in his complaint are based solely on the language of SCC Policy 301. (Dkt. #14).

14 While defendants have filed both a response and a reply pursuant to the court's order converting
15 their motion to dismiss into a motion for summary judgment, no further response or reply has been filed by
16 plaintiff. For the reasons set forth below, the undersigned finds that plaintiff's substantive due process
17 rights were not violated, that defendants are entitled to qualified immunity, and that all claims against
18 defendant Mark Seling should be dismissed.

19 I.  Standard of Review

20 Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no
21 genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
22 Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c). In deciding whether or not to grant summary
23 judgment, the court must view the record in the light most favorable to the nonmoving party and must
24 indulge all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e).

25 When a motion for summary judgment is made and supported as provided in Fed. R. Civ. P. 56, the
26 adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by
27 affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a
28 genuine issue for trial. Fed. R. Civ. P. 56(e). If the nonmoving party does not so respond, summary

judgment, if appropriate, shall be rendered against that party. Id.  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257.  Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

II.  Washington's Sexually Violent Predators Statutory and Regulatory Scheme

Under RCW 71.09.030, a county prosecuting attorney may file a petition with that county's court, alleging that an individual who falls within one of five statutorily defined classes of persons is a "sexually violent predator," as that term is defined in RCW 71.09.020(16), and "stating sufficient facts" to support that allegation.  Upon the filing of such a petition, the court must "determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator." RCW 71.09.040(1).  If that determination is made, the court then is to "direct that the person be taken into custody." Id.  Within seventy-two hours of being taken into custody, the court must provide the person with notice of, and an opportunity to appear at, a hearing to contest probable cause. RCW 71.09.040(2).

If a determination of probable cause is made at the hearing, the court must "direct that the person be transferred to an appropriate facility for an evaluation" as to whether he or she is a sexually violent predator. RCW 71.09.040(4).  The statute further states that the evaluation is to be conducted by a person "deemed to be professionally qualified to conduct" such an evaluation in accordance with rules developed by DSHS. Id.  Pursuant to this mandate, DSHS has promulgated regulations governing how the sexually violent predator evaluation is to be conducted:

> (1) When a court orders a person transferred to an appropriate facility for an evaluation as to whether the person is a sexually violent predator, pursuant to RCW 71.09.040(4), the department shall, prior to the scheduled commitment hearing or trial, provide an evaluation to the court, and must make a recommendation as to whether the person has been convicted of or charged with a crime of sexual violence and suffers from a mental abnormality or personality disorder which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility.
>
> (2) The evaluation must be conducted in accordance with the criteria set forth in WAC [Washington Administrative Code] 388-880-033, and must be in the form required by and filed in accordance with WAC 388-880-034 and 388-880-036.

WAC 388-880-030.  However, "[i]n no event shall the person [with respect to whom probable cause was found to exist] be released from confinement prior to trial." RCW 71.09.040(4).

Pursuant to RCW 71.09.050(1), "[w]ithin forty-five days after the completion of any hearing held

1  pursuant to RCW 71.09.040, the court shall conduct a trial to determine whether the person is a sexually
2  violent predator." The trial may be continued: (a) "upon the request of either party and a showing of good
3  cause," or (b) "by the court on its own motion in the due administration of justice," if the person "will not
4  be substantially prejudiced." Id. Again, the statute provides that the person "shall be confined in a secure
5  facility for the duration of the trial. Id.

6  III.     Plaintiff's Substantive Due Process Rights Have Not Been Violated

7     The Fourteenth Amendment to the United States Constitution provides that "no state shall 'deprive
8  any person of life, liberty, or property without due process of law.'" Toussaint v. McCarthy, 801 F.3d
9  1080, 1089 (9th Cir. 1986). Thus, plaintiff "must, as a threshold matter, show a government deprivation of
10 life, liberty, or property," to establish a substantive due process claim under the Fourteenth Amendment.
11 Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (absence of claim that liberty or property
12 interest has been impaired is fatal defect in substantive due process argument) (quoting Jeffries v. Turkey
13 Run Consol. Sch. Dist., 492 F.2d 1, 4 (7th Cir. 1974)). Substantive due process forbids the deprivation of
14 life, liberty, or property in such a way that "'shocks the conscience' or 'interferes with rights implicit in the
15 concept of ordered liberty.'" Id. (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)).

16    In his complaint, plaintiff alleges that Washington's sexually violent predator statute commands the
17 state to provide an evaluation to determine whether he is a sexually violent predator within forty-five days
18 of his probable cause hearing. A plain reading of the statutory scheme, however, does not support this
19 argument. Under RCW 71.09.040(4), if a determination of probable cause is made at the probable cause
20 hearing, the court must "direct that the person be transferred to an appropriate facility for an evaluation" as
21 to whether he or she is a sexually violent predator. RCW 71.09.050(1) states that within forty-five days
22 after the hearing held pursuant to RCW 71.09.040, the court "shall conduct a trial to determine whether
23 the person is a sexually violent predator." The trial, however, may be continued: (a) "upon the request of
24 either party and a showing of good cause," or (b) "by the court on its own motion in the due administration
25 of justice," if the person "will not be substantially prejudiced." RCW 71.09.050(1). Neither statute
26 mandates that the evaluation occur within forty-five days of the probable cause hearing. While RCW
27 71.09.050(1) does require that a trial be held within forty-five days after the hearing, the trial may be
28 continued by either party or *sua sponte* by the court as indicated above.

REPORT AND RECOMMENDATION
Page - 4

1    Plaintiff further alleges in his complaint that such a right is provided by administrative regulations
2    promulgated by DSHS. Plaintiff, however, points to no specific administrative regulation that grants such
3    a right. Indeed, none of the regulations adopted by DSHS to conduct sexually violent predator evaluations
4    pursuant to the mandate of RCW 71.09.040(4) grants that right or even makes reference to a forty-five day
5    period. See WAC 388-880-030, -033, -034, -035, and -036. Therefore, neither the applicable state
6    statutes nor the administrative regulations promulgated by DSHS to conduct sexually violent predator
7    evaluations support plaintiff's argument that he has a protected liberty interest in having his evaluation
8    performed within forty-five days of his probable cause hearing.

9    Plaintiff's claim in his response to defendants' motion to dismiss that his substantive due process
10   right to have an evaluation performed within a forty-five day period arises from the language of SCC
11   Policy 301 is equally without merit. SCC Policy 301, plaintiff asserts, requires the SCC to provide an
12   evaluation within forty-five days of a resident's admission to the SCC to determine if the resident needs to
13   be confined. Plaintiff describes such evaluations as "admissions" evaluations. As such, plaintiff argues
14   SCC Policy 301 provides him with a protected liberty interest in receiving an "admissions" evaluation
15   within forty-five days of being admitted to the SCC. This "admissions" evaluation, plaintiff claims, is
16   separate from the "commitment" evaluations required by RCW 71.09.040 and covered by another SCC
17   policy statement, SCC Policy 302.

18   Plaintiff's reliance on SCC Policy 301, however, is misplaced. It is true that an agency "can create
19   a duty to the public which no statute has expressly created." United States v. Figty-Three (53) Eclectus
20   Parrots, 685 F.2d 1131, 1136 (9th Cir. 1982). However, "[n]ot all agency policy pronouncements which
21   find their way to the public can be considered regulations enforceable in federal court." Id. (internal quotes
22   and citations omitted); see also James v. United States Parole Commission, 159 F.3d 1200, 1205 (9th Cir.
23   1998) ("It is well settled that internal policy manuals of federal agencies do not generally create due
24   process rights in others."). For an internal agency policy to have the "force and effect of law" that is
25   "enforceable against an agency in federal court," that policy must:

26      (1) prescribe substantive rules-not interpretive rules, general statements of policy or
        rules of agency organization, procedure or practice-and, (2) conform to certain
27      procedural requirements.

28   Fifty-Three (53) Eclectus Parrots, 685 F.2d at 1136 (internal quotes and citations omitted). To satisfy the

REPORT AND RECOMMENDATION
Page - 5

first requirement, the policy "must be legislative in nature, affecting individual rights and obligations." Id. To satisfy the second requirement, it "must have been promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed" by the legislature. Id.

A review of the record indicates SCC Policy 301 is an interpretive, procedural policy statement, and is not intended to have the "force and effect of law." James, 159 F.3d at 1206 (finding plaintiff could not rely on internal agency statement, as it was used only as interpretive, procedural rule to guide agency practice). The language at issue in SCC Policy 301 concerns certain information the forensic therapist is responsible for providing a new resident upon that resident's admission to the SCC. That language states in relevant part that the forensic therapist:

> 4.  Informs the resident of the following:
>
>     a.  A psychologist will meet with resident and explain the SCC evaluation process.
>
>     b.  The evaluation will be completed with forty-five (45) days from the date of admission unless the resident waives this right through his or her attorney.
>
>     c.  Conversations and behavioral observations during this period are not confidential.
>
>     d.  When the evaluation is completed, a letter describing the evaluation findings will be mailed to the Court hearing the case.

SCC Policy 301, Exhibit 1, attached to Defendant's Further Response. Specifically, plaintiff argues item 4.b. creates a liberty interest, and thus a substantive due process right, in receiving an evaluation within forty-five days of being admitted to the SCC.

According to Lee Mosley, who is the Acting Director of Policy and Staff Training for the SCC, SCC Policy 301 was "originally created to guide internal procedures relating to the admissions of new residents in compliance with the requirements of state law." Declaration of Lee Mosley, ¶ 2 and ¶ 4, Exhibit 3, attached to Defendants' Further Response. As with other SCC internal policy statements, SCC Policy 301 is "intended to guide agency staff in the internal operations" of the SCC in compliance with state law, agency regulations, and administrative policies. Id. at ¶ 3. With respect to item 4.b. of SCC Policy 301, Mr. Mosley further declared in relevant part:

> The statement on page 4 of the attached [SCC Policy 301] Procedures [section], item 4.b., was meant to assure that residents were aware of (1) RCW § 71.09.050(1), which addresses a forty-five day speedy trial period between a probable cause hearing and a

REPORT AND RECOMMENDATION
Page - 6

>commitment trial, and (2) RCW § 71.09.040(4), which speaks to the forensic evaluation which must be performed before the trial. That statement, to my best belief, was not intended to obligate the Special Commitment Center to actions or a timeline different from that of the statute and administrative code.

Declaration of Lee Mosley, ¶ 6. Similarly, SCC Policy 302 is designed to "guide staff and the forensic evaluators in complying with RCW § 71.09.040(4) and applicable" agency regulations at the time that policy statement was written. Declaration of Lee Mosley, ¶ 7; SCC Policy 302, Exhibit 2, attached to Defendants' Further Response. As such, neither SCC Policy 301 nor SCC Policy 302 create the liberty interest or substantive due process right plaintiff seeks.

IV.   <u>Defendants Are Entitled to Qualified Immunity</u>

Under the doctrine of qualified immunity, state officials "performing discretionary functions [are protected] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Somers v. Thurman</u>, 109 F.3d 614, 617 (9th Cir. 1997). To determine whether a state official is entitled to qualified immunity, the court must perform a two part inquiry. First, the court considers "whether the law governing the official's conduct was clearly established." <u>Somers</u>, 109 F.3d at 617. If the law was not clearly established at the time, "the official is entitled to immunity from suit." <u>Id.</u> If the law was so established, the court next asks whether "under that law, a reasonable official would have believed the conduct was lawful." <u>Id.</u> Thus, "an official is denied qualified immunity only if the law was clearly established and a reasonable official could not have believed the conduct was lawful." <u>Id.</u>

The above inquiry "generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.'" <u>Grossman v. City of Portland</u>, 33 F.3d 1200, 1208 (9th Cir. 1994) (citing <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987). To defeat a claim of qualified immunity, the unlawfulness of the state official's conduct must be "apparent." <u>Id.</u> (citing <u>Anderson</u>, 483 U.S. at 640). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991) (citation omitted); <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001). Such an "accommodation for reasonable error" has been made "because 'officials should not err always on the side of caution' because they fear being sued." <u>Hunter</u>, 502 U.S. at 229 (citation omitted).

Defendants argue they are entitled to qualified immunity. The undersigned agrees. In determining

REPORT AND RECOMMENDATION
Page - 7

1  whether defendants are entitled to qualified immunity, the court "must first determine whether the plaintiff
2  has alleged the deprivation of an actual constitutional right at all." Conn v. Gabbert, 526 U.S. 286, 290
3  (1999). As discussed above, plaintiff has failed to show he has a liberty interest in receiving a sexually
4  violent predator evaluation within a forty-five day period. Thus, he cannot establish that a substantive due
5  process violation has occurred. Accordingly, defendants are entitled to qualified immunity.

6  V.      All Claims Against Defendant Seling Should Be Dismissed

7        To state a claim under 42 U.S.C. § 1983, a complaint must allege (i) that the conduct complained
8  of was committed by a person acting under color of state law and (ii) that the conduct deprived a person of
9  a right, privilege, or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor,
10  451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Section
11  1983 is the appropriate avenue to remedy an alleged wrong only if both of the above elements are present.
12  Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

13        The complaint, furthermore, must allege facts showing how individually named defendants caused
14  or personally participated in causing the harm alleged in the complaint. Arnold v. IBM, 637 F.2d 1350,
15  1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of
16  supervisory responsibility or position. Monell v. New York City Dept. of Social Services, 436 U.S. 658,
17  694 n.58 (1978). In other words, a theory of *respondeat superior* is not sufficient to state a section 1983
18  claim. Padway v. Palches, 665 F.2d 965, 968 (9th Cir. 1982).

19        Defendants argue that because defendant Seling ended his employment with the SCC two months
20  prior to plaintiff's arrival at the SCC, plaintiff cannot show that defendant Seling caused or personally
21  participated in causing the alleged deprivation of his substantive due process rights. As such, defendants
22  assert that defendant Seling cannot be held liable under 42 U.S.C. § 1983, and thus should be dismissed
23  from this case. The undersigned agrees. Plaintiff has not shown how defendant Seling has caused or
24  personally participated in causing the harm alleged in his complaint. Indeed, plaintiff's complaint appears
25  to be a form complaint from which references to defendant Seling, other than as a named defendant, have
26  been crossed out. Accordingly, defendant Seling should be dismissed from this case.

27                                    CONCLUSION

28        For the aforementioned reasons, the undersigned recommends that the court GRANT defendants'

converted motion for summary judgment. Plaintiff has not alleged any cause or claim upon which relief can be granted in this matter.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed set this matter for consideration on **April 29, 2005**, as noted in the caption.

DATED this 5th day of April, 2005

/s/ Karen L. Strombom
KAREN L. STROMBOM
United States Magistrate Judge